IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

STEVEN HORTON,                        *
                                      *
        Plaintiff,                    *
                                      *
        v.                            *        CV 118-165
                                      *
ALBERT REEVES, ROY REEVES,            *
DURWOOD "WOODY" DAVIS,                 *
MCDUFFIE COUNTY,                      *
                                      *
        Defendants.                   *

                        O R D E R

        Before the Court are Defendant Davis's motion to dismiss or,
alternatively, for a more definite statement (Doc. 14) and
Defendants Albert Reeves, Roy Reeves ("Individual Moving
Defendants"), and McDuffie County's (collectively, "Moving
Defendants") motion for judgment on the pleadings (Doc. 32). As
an initial matter, the Court **DENIES AS MOOT** Defendant Davis's
motion to dismiss (Doc. 14). After Defendant Davis filed his
motion, Plaintiff filed an amended complaint.[1]  "It is well-

---

[1] Defendant Davis filed and served his motion to dismiss or, alternatively, for
a more definite statement on November 6, 2018, and Plaintiff filed its amended
complaint (Doc. 24) twenty-four days later, on November 30, 2018.  Pursuant to
Federal Rule of Civil Procedure 15, Plaintiff lacked the authority to file the
amended complaint:  "A party may amend its pleading once as a matter of course
within: (A) [twenty-one] days after serving it, or (B) if the pleading is one
to which a responsive pleading is required, [twenty-one] days after service of
a responsive pleading or [twenty-one] days after service of a motion under Rule
12(b), (e), or (f), whichever is earlier."  FED. R. CIV. P. 15(a)(1).  "In all

established that an amended complaint super[s]edes an original complaint and renders the original complaint without legal effect." Renal Treatment Ctrs.–Mid-Atl., Inc. v. Franklin Chevrolet-Cadillac-Pontiac-GMC, No. 608CV087, 2009 WL 995564, at *1 (S.D. Ga. Apr. 13, 2009) (quoting In re Wireless Tel. Fed. Cost Recovery Fees Litig., 396 F.3d 922, 928 (8th Cir. 2005)) (citing Fritz v. Standard Sec. Life Ins. Co. of N.Y., 676 F.2d 1356, 1358 (11th Cir. 1982)); accord Dresdner Bank AG v. M/V Olympia Voyager, 463 F.3d 1210, 1215 (11th Cir. 2006) (finding that the prior complaint "is no longer a part of the pleader's averments against his adversary"); Malowney v. Fed. Collection Deposit Grp., 193 F.3d 1342, 1345 n.1 (11th Cir. 1999) ("An amended complaint supersedes an original complaint."). Here, the amended complaint supersedes the original complaint effectively mooting Defendant Davis's motion to dismiss or, alternatively, for a more definite statement.

---

other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave." Id. at 15(a)(2).

Plaintiff filed his amended complaint twenty-four days after Defendants served their motions to dismiss. Nevertheless, the Court retroactively allows the amended complaint, and the amended complaint is deemed the operative complaint as of its filing date, November 30, 2018. First, "[t]he court should freely give leave when justice so requires." FED. R. CIV. P. 15(a)(2). Second, "[o]rdinarily, a party must be given at least one opportunity to amend before the district court dismisses the complaint." Corsello v. Lincare, Inc., 428 F.3d 1008, 1014 (11th Cir. 2005) (per curiam). Accordingly, the Court excuses Plaintiff's failure to comply with the Federal Rules of Civil Procedure this time.

The Court now turns to Moving Defendant's pending motion for judgment on the pleadings. Although Plaintiff's Amended Complaint contains four counts, Plaintiff voluntarily dismissed Count III and Count IV as to all defendants. (See Voluntary Dismissal, Doc. 35; Order, Doc. 36.) Thus, the remaining counts are as follows:

Count I:    Section 1983 claim for malicious prosecution;

Count II:   Section 1983 claim for violation of Plaintiff's right to substantive due process.

(Am. Compl., Doc. 24, at 22–27.) For the reasons contained herein, the Court **GRANTS** Moving Defendants' motion for judgment on the pleadings.

## I. BACKGROUND

The Court outlines only the facts relevant to its findings as to Counts I and II and, notably, only as related to Moving Defendants. Plaintiff details background situations occurring before he was first brought into the custody of McDuffie County in 2011. Because this background is not directly relevant to this Order, the Court summarizes the events.

In 2007, Plaintiff states he witnessed a fatal two-vehicle accident, and Defendant Albert Reeves ("A. Reeves"), a police investigator with the McDuffie County Sheriff's Office, arrived at the scene. (Am. Compl., ¶¶ 6, 10.) Plaintiff and A. Reeves did

not speak at the scene of the accident, but, thereafter, A. Reeves hired Plaintiff to install countertops.[2] (Id. ¶¶ 11, 13.)

Later, a wrongful death suit was brought in connection with the 2007 accident. (Id. ¶ 14.) Plaintiff and A. Reeves were both used as witnesses, but, because of their differing accounts of the accident, Plaintiff offers statements showing that A. Reeves treated Plaintiff with hostility. (See, e.g., id. ¶¶ 16-17, 24-25, 29.)

In March of 2010, Plaintiff and his wife separated, and his wife obtained a temporary protective order ("TPO") against Plaintiff. (Id. ¶ 18.) The next month, the couple reconciled and the TPO was dismissed. (Id. ¶ 19.)

## A. Arrest for Battery and Release on Bond

On October 27, 2011, A. Reeves and other non-party officers responded to a reported domestic disturbance at Plaintiff's home. (Am. Compl., ¶ 30.) Plaintiff was arrested and charged with misdemeanor battery. (Id.) After his arrest, Plaintiff was housed at McDuffie County Jail. (Id. ¶ 31.) Defendant Roy Reeves ("R. Reeves"), A. Reeves's father, was a jail administrator at McDuffie County jail when Plaintiff arrived. (Id. ¶¶ 5, 31.)

On October 28, 2011, Plaintiff was released on bond with pretrial release conditions. (Id. ¶ 33.) One such condition,

---

[2] In 2007, Plaintiff owned his own custom countertop installation business. (Am. Compl., ¶ 9.)

referred to by the parties as the "no-contact" condition, required Plaintiff to cease all contact with his wife. (Id. ¶¶ 33, 44; Br. Resp. to Mot. for J. Pleadings, Doc. 34, at 3.) R. Reeves prepared and signed the bond order with the "pre-printed name of Magistrate Judge W. Bryant Swan who was out of town at the time and had not given any instructions, either telephonically or electronically, to R. Reeves or any other jail staff regarding the bond order." (Am. Compl., ¶ 33.) In 2016, "R. Reeves testified that the manner in which the bond order was procured was part of the normal policy and practice of the McDuffie County jail." (Id. ¶ 116.)

Apparently, Plaintiff lived at home for some period of time after being released on bond. (Compare Br. Resp. to Mot. for J. Pleadings, at 18 ("[Plaintiff] and his wife continued to reside together after [Plaintiff] was arrested for simple battery."), with Reply Supp. Mot. for J. Pleadings, Doc. 37, at 8 ("Plaintiff lived with his wife for *three days* after he bonded out of jail under the 'no contact' bond condition." (emphasis in original).) Plaintiff alleges that in November of 2011, non-defendant officers threatened Plaintiff's wife to incentivize her to leave Plaintiff. (Am. Compl., ¶ 34.) That same month, Plaintiff's wife told Plaintiff she wished to separate. (Id. ¶ 39.) On January 19, 2017, Plaintiff "signed a consent order to pay child support," which Judge Roger W. Dunaway Jr. subsequently signed. (Id. ¶ 40.) From November 1, 2011, to February 29, 2012, Plaintiff states he

regularly communicated with his wife "primarily about their children or their separation." (Id. ¶ 41.)

## B. Arrest for Aggravated Stalking

"Around or about February 29, 2012, following alleged complaints by [Plaintiff's wife] to local law enforcement that [Plaintiff] was contacting her in violation of the October 28, 2011, bond order, McDuffie County Sheriff's deputies obtained an arrest warrant for [Plaintiff] for aggravated stalking." (Am. Compl., ¶ 44.) These deputies arrested Plaintiff that same day. (Id.) In brief, Plaintiff clarifies that A. Reeves was one of the deputies who obtained the arrest warrant. (Br. Resp. to Mot. for J. Pleadings, at 4.)

On April 12, 2012, a bond hearing was held for Plaintiff's aggravated stalking charge before Judge Dunaway. (Am. Compl., ¶ 57.) The State's attorney, Defendant Durwood Davis — who is not a party to the motion before the Court — objected to the court setting bond before completion of an already ordered mental health evaluation of Plaintiff could be completed.[3] (Id. ¶¶ 57-58.) It was at this hearing that Plaintiff's defense attorney informed Judge Dunaway that Plaintiff's wife initiated some contact with Plaintiff while the "no-contact" bond condition was in effect.

---

[3] In the Amended Complaint, Plaintiff mentions only that Defendant Davis made statements concerning Plaintiff's mental stability. (Am. Compl., ¶ 57.) In brief, Plaintiff states, "A. Reeves informed the trial court that, in his opinion, [Plaintiff] was unstable, and Defendant Davis concurred and moved for a psychiatric evaluation." (Br. Resp. to Mot. for J. Pleadings, at 5.)

(Id. ¶ 59.) While in custody, Plaintiff and his wife executed their divorce.[4] (Id. ¶ 70.)

## C. Grand Jury Indictment and Guilty Plea

A McDuffie County grand jury indicted Plaintiff on three counts of aggravated stalking on June 19, 2012. (Am. Compl., ¶ 72.) The next day, Plaintiff was released on bond. (Id. ¶ 73.) Within a few days of being released, Plaintiff states A. Reeves drove to his home, "lowered his car window, and made a statement to the effect that 'I'm still going to get you.'" (Id. ¶ 74.) In August of 2012, Plaintiff "pled not guilty to one charge of simple battery and three counts of aggravated stalking." (Id. ¶ 77.) Plaintiff later changed his plea, "on the advice of his defense attorney," to a plea of guilty "to one felony count of aggravated stalking and one misdemeanor count of simple battery." (Id. ¶ 78.) According to Plaintiff, "[t]he sole factual basis for the aggravated stalking charge, as alleged in the indictment and restated in the plea hearing, included the element of having 'violated a condition of pre[]trial release' as set forth in the conditions of the pre[]trial release order issued on October 28, 2011." (Id. ¶ 79.)

Plaintiff was sentenced to ten years of probation for the aggravated stalking conviction and one year of probation for the

---

[4] Plaintiff takes issue with the circumstances surrounding the divorce. (Am. Compl., ¶¶ 68, 70.) The circumstances, as alleged by Plaintiff, do not include or reference Moving Defendants.

simple battery conviction, to run concurrently. (Id. ¶ 80.)
Before concluding the sentencing hearing, Judge Dunaway inquired
as to whether a TPO was in place. (Id. ¶ 81.) Defendant "Davis
informed the Court there was a TPO in place"; Defendant Davis's
statement was, according to Plaintiff, "a blatant falsity." (Id.)
Judge Dunaway then ordered the execution of a permanent protective
order requiring Plaintiff "to refrain from any contact with his
ex-wife and minor children." (Id. ¶ 82.)

## D. Post-Conviction Arrests

After being released from custody, Plaintiff was brought in
by non-defendant officers multiple times for alleged probation
violations and failure to pay child support. (Am. Compl., ¶¶ 94–
104.) Plaintiff's only mention of either of the Individual
Defendants during this time is that after one arrest, the arresting
officer "inquir[ed] as to why he was arresting [Plaintiff] again,"
and R. Reeves took over processing Plaintiff and processed him
directly into the general population. (Id. ¶¶ 106-07.) According
to Plaintiff, processing in this way is "contrary to normal
practice and procedure." (Id. ¶ 107.)

## E. Final Arrest and Petition for Writ of Habeas Corpus

Plaintiff states he felt "he was no longer safe in McDuffie
County" and lived under "an assumed persona until August [of] 2016,
when he was arrested in Liberty County for driving under the
influence and several other charges." (Am. Compl., ¶¶ 111, 113.)

While still in Liberty County jail, Plaintiff petitioned for a writ of habeas corpus in September of 2016 in McDuffie County Superior Court. (Id.) On October 12, 2016, a hearing was held before Judge Dunaway. (Id. ¶ 114.) That same day, Judge Dunaway vacated Plaintiff's aggravated stalking conviction. (Id. ¶ 118.) As stated by Plaintiff, "One of the findings the court made was that, in the absence of a magistrate judge, a bond order setting[] conditions of bond could not have been legally issued for the misdemeanor family-violence battery charge, and that therefore [Plaintiff] could not possibly have committed the offense of aggravated stalking." (Id. ¶ 118.) Plaintiff filed this action on October 2, 2018. (See Compl., Doc. 1.)

## II. LEGAL STANDARD

"After the pleadings are closed — but early enough not to delay trial — a party may move for judgment on the pleadings." FED. R. CIV. P. 12(c). "Judgment on the pleadings is proper when no issues of material fact exist, and the moving party is entitled to judgment as a matter of law based on the substance of the pleadings and any judicially noticed facts." Cunningham v. Dist. Attorney's Office for Escambia Cty., 592 F.3d 1237, 1255 (11th Cir. 2010). When considering a motion for judgment on the pleadings, the Court must "accept as true all material facts alleged in the non-moving party's pleading, and . . . view those facts in the light most

favorable to the non-moving party." Perez v. Wells Fargo N.A., 774 F.3d 1329, 1335 (11th Cir. 2014).

## III. DISCUSSION

Moving Defendants argue for judgment in their favor as to Counts I and II. Moving Defendants argue: (A) Individual Moving Defendants are entitled to qualified immunity as to Count I; (B) Count II is barred by the statute of limitations[5]; and (C) Defendant McDuffie County is not liable under Counts I or II. (Mot. for J. Pleadings, at 4-14.) The Court addresses each argument in turn.

### A. Qualified Immunity

Individual Moving Defendants move for judgment as to Plaintiff's malicious prosecution claim on grounds that they are entitled to qualified immunity. Qualified immunity is a judicially created affirmative defense under which "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).

---

[5] At this stage in the litigation, Moving Defendants do not argue that Plaintiff's malicious prosecution claim is barred by the statute of limitations. (Mot. for J. Pleadings, Doc. 32, at 4 n.2.)

For qualified immunity to apply, a public official first has to show he was "acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." Lumley v. City of Dade City, 327 F.3d 1186, 1194 (11th Cir. 2003) (citations omitted). To determine whether a government official was acting within the scope of his discretionary authority, courts consider whether the official "was (a) performing a legitimate job-related function (that is, pursuing a job-related goal), (b) through means that were within his power to utilize." Holloman ex rel. Holloman v. Harland, 370 F.3d 1252, 1265 (11th Cir. 2004). Once a defendant establishes that he was "acting within [his] discretionary authority, the burden shifts to the plaintiff to demonstrate that qualified immunity is not appropriate" by showing the facts as pleaded by the non-movant reveal that the defendant's conduct violated a constitutional right and that right was clearly established. Bowen v. Warden, Baldwin State Prison, 826 F.3d 1312, 1319 (11th Cir. 2016); Lumley, 327 F.3d at 1194.

Plaintiff argues that Individual Moving Defendants maliciously prosecuted him. The Eleventh Circuit has recognized "malicious prosecution as a violation of the Fourth Amendment and a viable constitutional tort cognizable under [Section] 1983." Wood v. Kesler, 323 F.3d 872, 881 (11th Cir. 2003). As a Section 1983 claim, malicious prosecution "provide[s] a broad remedy for

11

violations of federally protected civil rights." Blue v. Lopez, 901 F.3d 1352, 1359-60 (11th Cir. 2018).

Malicious prosecution requires a plaintiff to "prove (1) the elements of the common law tort of malicious prosecution[] and (2) a violation of [his] Fourth Amendment right to be free from unreasonable seizures." Black v. Wigington, 811 F.3d 1259, 1266 (11th Cir. 2016). The common[]law elements include: "(1) a criminal prosecution instituted or continued by the present defendant; (2) with malice and without probable cause; (3) that terminated in the plaintiff accused's favor; and (4) caused damage to the plaintiff accused." Id. The "unreasonable seizure" element of a malicious prosecution claim "requires a seizure 'pursuant to legal process.'" Id. at 1267 (quoting Heck v. Humphrey, 512 U.S. 477, 484 (1994)). "Legal process includes an arrest warrant." Id. The Court separately analyzes Plaintiff's malicious prosecution claim against (1) R. Reeves and (2) A. Reeves.

1. R. Reeves

There is a dispute as to whether R. Reeves was acting within his discretionary authority. The alleged actions, however, are insufficient to lead to a claim of malicious prosecution. Thus, the Court begins and ends its analysis by determining that R. Reeves did not violate Plaintiff's constitutional right. See Bennett v. Parker, 898 F.2d 1530, 1534 (11th Cir. 1990) (stating that when addressing the defense of qualified immunity, "the

12

district courts should first focus on whether the plaintiff has established a constitutional violation before determining whether material issues of fact are present."); see also Mitchell v. McKeithen, 672 F. App'x 900, 902 (11th Cir. 2016) ("We conclude there was no constitutional violation. This conclusion leaves us with no need to evaluate the district court's finding about qualified immunity, so we do not.").

The only action Plaintiff alleges R. Reeves took to maliciously prosecute him was filling out the bond with the pretrial bond conditions. Under the first prong of a malicious prosecution claim, R. Reeves cannot be found liable under the common law tort of malicious prosecution because he in no way instituted or continued Plaintiff's criminal prosecution.

In analyzing the elements of the common law tort of malicious prosecution, the Eleventh Circuit "has looked to both federal and state law." Wood, 323 F.3d at 881. But "a Fourth Amendment malicious prosecution claim under [Section] 1983 remains a federal constitutional claim, and its elements and whether they are met ultimately are controlled by federal law." Blue, 901 F.3d at 1358 (quoting Wood, 323 F.3d at 882).

The only "'proper targets' of a malicious prosecution claim are individuals involved in the decision to prosecute the plaintiff." Blair v. McCollum, No. 1:06-CV-1345-BBM, 2008 WL 11406006, at *5 (N.D. Ga. Jan. 7, 2008) (citing Eubanks v. Gerwen,

13

40 F.3d 1157, 1160–61 (11th Cir. 1994)). Although a defendant who does not expressly initiate the prosecution may be a proper defendant for malicious prosecution, the plaintiff must show the defendant "directly or indirectly urge[d] a law enforcement official to begin criminal proceedings." King v. King, 342 F. Supp. 3d 1364, 1380–81 (M.D. Ga. Sept. 20, 2018) (quoting Willis v. Brassell, 469 S.E.2d 733, 737 (Ga. Ct. App. 1996)) (holding a jury could reasonably find the ex-police officer and non-attorney investigator "jointly prosecuted [the plaintiff] without probable cause" because a jury could find they reported to law enforcement and investigated a crime they knew did not provide probable cause for an arrest) (applying Georgia law); cf. Eubanks, 40 F.3d at 1160–61 (finding officers did not maliciously prosecute the plaintiff when they "turn[ed] over all relevant information about the matter to the State Attorney" because "they did not make the decision as to whether or not to prosecute [the plaintiff][,] nor did they act in such a way as improperly to influence the decision by the State Attorney in that regard."). Furthermore, in Willis, the Georgia Court of Appeals established a line:

> [B]etween cases where a party directly or indirectly
> urges a law enforcement official to begin criminal
> proceedings and cases where a party merely relays facts
> to an official who then makes an independent decision to
> arrest or prosecute. In the former case there is
> potential liability for malicious prosecution; in the
> latter case there is not. It is clear, though, that
> initiation of the criminal action need not be expressly
> directed by the party to be held liable. A distinction

14

must be taken between actually instigating or procuring the institution of criminal proceedings and merely laying information before a law enforcement official without in any way attempting to influence his judgment.

469 S.E.2d at 737 (citation and internal quotation marks omitted).

Here, Plaintiff does not allege R. Reeves took any action regarding the decision to arrest or prosecute Plaintiff. Nor does Plaintiff allege R. Reeves conveyed any information about Plaintiff to anyone, much less officers involved in the decision to arrest Plaintiff. Thus, R. Reeves cannot be said to have directly or indirectly urged law enforcement to initiate the prosecution. Having found no constitutional violation, Plaintiff's claim that R. Reeves maliciously prosecuted Plaintiff fails on the merits as a matter of law.

2. A. Reeves

Plaintiff does not challenge that A. Reeves was acting within his discretionary authority. (See Br. Resp. to Mot. for J. Pleadings, at 12-15.) As such, A. Reeves is entitled to qualified immunity unless his conduct violated Plaintiff's constitutional right and that right was clearly established. The Court begins by analyzing whether, under the common law tort of malicious prosecution, there is evidence that A. Reeves instituted or continued Plaintiff's criminal prosecution. The Court finds there is not. Thus, A. Reeves cannot be found to have maliciously prosecuted Plaintiff and A. Reeves is entitled to qualified

immunity as to Plaintiff's Section 1983 claim of malicious prosecution.

Plaintiff's only argument that A. Reeves maliciously prosecuted him is that "McDuffie County Sheriff's deputies obtained an arrest warrant for [Plaintiff] for aggravated stalking." The Court assumes A. Reeves participated in obtaining an arrest warrant as specified by Plaintiff in his response. Thus, the Court determines whether A. Reeves violated Plaintiff's constitutional right through his role in obtaining a warrant to arrest Plaintiff for alleged aggravated stalking.

An officer may be liable for applying for a warrant if "he should have known that his application 'failed to establish probable cause.'" Black, 811 F.3d at 1267 (quoting Kelly v. Curtis, 21 F.3d 1544, 1553 (11th Cir. 1994)); see also Kjellsen v. Mills, 517 F.3d 1232, 1237 (11th Cir. 2008) ("Because lack of probable cause is a required element to prove a [Section] 1983 claim for malicious prosecution in violation of the Constitution, the existence of probable cause defeats the claim."); Wal-Mart Stores, Inc. v. Blackford, 449 S.E.2d 293, 294 (Ga. 1994) ("The gravamen of the complaint is the absence of probable cause on the part of the person instituting the prosecution."). "Under this standard, . . . the question is not whether probable cause actually existed; rather, the question is whether the officer had

'arguable' probable cause." Carter v. Gore, 557 F. App'x 904, 908 (11th Cir. 2014) (internal punctuation omitted).

In determining whether an officer had arguable probable cause, we look to the "facts and circumstances within the officer's knowledge." Michigan v. DeFillippo, 443 U.S. 31, 37 (1979); see also United States v. Lyons, 403 F.3d 1248, 1253 (11th Cir. 2005). A neutral magistrate issuing the arrest warrant provides the applying officer with a "shield of immunity" because it "is the clearest indication that the officers acted in an objectively reasonable manner." Taylor v. Taylor, 649 F. App'x 737, 744 (11th Cir. 2016). But officers are not entitled to qualified immunity if they "fabricated or unreasonably disregarded certain pieces of evidence to establish probable cause or arguable probable cause." Kingsland v. City of Miami, 382 F.3d 1220, 1233 (11th Cir. 2004).

Because the warrant was to arrest Plaintiff for aggravated stalking in violation of the bond condition, Plaintiff must show A. Reeves lacked arguable probable cause to believe Plaintiff committed that offense. As provided in Georgia Code section 16-5-91(a): "A person commits the offense of aggravated stalking when such person, in violation of a . . . condition of pretrial release, . . . places under surveillance, or contacts another person at or about a place or places without the consent of the other person for the purpose of harassing and intimidating the other person."

Plaintiff argues A. Reeves lacked probable cause because: (a) the pretrial conditions in the bond order were invalid; thus, could not be violated; and (b) Plaintiff did not violate the "no-contact" bond condition because "contact between [Plaintiff] and his wife was consensual, ongoing, also initiated by his wife, and as alleged is merely 'contact,' not rising to the level of conduct required to allege aggravated stalking." (Br. Resp. to Mot. for J. Pleadings, at 18-19.) According to Plaintiff, his points show "that under the totality of the circumstances[,] all the elements necessary to allege arguable probable cause for aggravated stalking were utterly absent when [A. Reeves] applied for an arrest warrant." (Id. at 19.)

### a. *Relying on the Validity of the Bond*

Expanding on his first argument, Plaintiff states that "the bond issuance statute is clear" that the bond is invalid. (Br. Resp. to Mot. for J. Pleadings, at 19.) Because the bond is clearly invalid, Plaintiff argues that the applying officer lacked arguable probable cause to apply for an arrest warrant based on the violation of the invalid bond.

A. Reeves states he relied on the validity of the pretrial bond order. (Mot. for J. Pleadings, at 9-10.) Plaintiff's arguments that *R. Reeves* violated the Georgia statute does not necessarily mean, without more, that *A. Reeves* lacked probable cause for relying on the bond order. Plaintiff offers no facts to

18

suggest that A. Reeves had any reason to doubt the bond's validity. All Plaintiff alleges is that "[t]he order contained the original signature of R. Reeves and the pre-printed name of Magistrate Judge W. Bryant Swan who was out of town at the time and had not given any instructions, either telephonically or electronically, to R. Reeves or any other jail staff regarding the bond order." This statement imputes no knowledge as to the validity of the bond on A. Reeves. The Court finds that without any allegations that A. Reeves had reason to believe the bond condition were invalid, Plaintiff's argument is unsupported.

The fact that other individuals also believed the bond and conditions were valid supports the fact that A. Reeves reasonably relied on the bond. Plaintiff's lawyer advised him to plead guilty to violating the bond condition, and a judge accepted the guilty plea. Without evidence that A. Reeves had reason to know the bond conditions were invalid, the Court finds no reason to conclude A. Reeves lacked arguable probable cause to apply for the arrest warrant. Therefore, A. Reeves cannot be found to have violated Plaintiff's constitutional right for relying on the validity of the bond.

> b. *Facts that Plaintiff Violated the "No-Contact" Bond Condition*

As to Plaintiff's second argument, Plaintiff admits that his wife complained to "local law enforcement that [Plaintiff] was

19

contacting her in violation of the October 28, 2011, bond order."
Upon that complaint, "McDuffie County Sheriff's deputies obtained
an arrest warrant for [Plaintiff] for aggravated stalking."
Plaintiff is correct that, under Georgia law, contact amounting to
aggravated stalking requires the contact to be done "for a
'harassing and intimidating' purpose." Johnson v. State, 449
S.E.2d 94, 96 (Ga. 1994). Here, however, the Court is not
determining whether Plaintiff engaged in aggravated stalking, but
whether, after receiving the complaint from Plaintiff's wife, A.
Reeves had arguable probable cause to apply for the arrest warrant.
The Court finds he did.

"[G]enerally, an officer is entitled to rely on a victim's
criminal complaint as support for probable cause." Myers v.
Bowman, 713 F.3d 1319, 1326-27 (11th Cir. 2013) (quoting Rankin v.
Evans, 133 F.3d 1425, 1441 (11th Cir. 1998)). Plaintiff points to
no evidence showing A. Reeves had reason to believe Plaintiff's
wife's complaint was untrustworthy or unreliable. See Taylor, 649
F. App'x at 744-45.

The only remaining evidence that could show Plaintiff did not
violate the bond order is evidence that Plaintiff's wife had
initiated other contact with Plaintiff and Plaintiff resided with
his wife for some time after the bond was set.
Plaintiff — carrying the burden of showing A. Reeves is not
entitled to qualified immunity — has not shown A. Reeves was aware

20

of these facts when he applied for the arrest warrant. Plaintiff provides that the facts pertaining to this contact between Plaintiff and his wife came out in the April 12, 2012 bond hearing two months after A. Reeves applied for the arrest warrant.

In addition to A. Reeves knowing the victim complained, a grand jury then indicted Plaintiff for three counts of aggravated stalking, which, as acknowledged by Plaintiff, is "prima facie evidence that probable cause existed for the prosecution." Kelly v. Serna, 87 F.3d 1235, 1241 (11th Cir. 1996); (Br. Resp. to Mot. for J. Pleadings, at 19.)

Based on the facts as alleged by Plaintiff, the Court is unable to find A. Reeves lacked arguable probable cause for applying for the arrest warrant. As such, A. Reeves cannot be found to have violated Plaintiff's constitutional right, and he is entitled to qualified immunity.

## B. Substantive Due Process Claim's Statute of Limitation

Moving Defendants' statute of limitations challenge applies only to claims within Count II. Turning to Count II, Plaintiff appears to concede that certain independent substantive due process claims are barred, including any potential due process claim for false arrest or false imprisonment. (See Br. Resp. to Mot. for J. Pleadings, at 9 n.10.) That leaves only Plaintiff's Section 1983 claim that Moving Defendants violated his right to freedom of intimate association. (See Am. Compl., at 25-27.)

21

Moving Defendants state that a substantive due process claim for violating Plaintiff's right to freedom of intimate association claim is barred by the statute of limitations. The parties to this motion do not dispute that the statute of limitations for this claim is two years. (Mot. for J. Pleadings, at 4; Br. Resp. to Mot. for J. Pleadings, at 10 n.11.) All events complained of by Plaintiff supporting his substantive due process claim occurred before 2013. According to Defendant, then, it follows that this claim is barred.

Plaintiff responds that his substantive due process claim did not accrue until his conviction was vacated on October 16, 2016.[6] (Br. Resp. to Mot. for J. Pleadings, at 10, 10 n.11.) Thus, the question for the Court to decide is when Plaintiff's Section 1983 claim for violation of his right to freedom of intimate association accrued.

### 1. Accrual of Section 1983 Claims

The general rule in Section 1983 cases is that "the statute of limitations does not begin to run until the facts which would support a cause of action are apparent or should be apparent to a person with a reasonably prudent regard for his rights." Mullinax v. McElhenney, 817 F.2d 711, 716 (11th Cir. 1987) (quoting Calhoun v. Ala. Alcoholic Beverage Control Bd., 705 F.2d 422, 425 (11th

---

[6] Plaintiff brought this suit on October 2, 2018. (See Compl.) Therefore, if this claim accrued when his conviction was vacated on October 16, 2016, Plaintiff brought the claim within the two-year statute of limitations.

Cir. 1983)). As stated by the Supreme Court, "accrual occurs when the plaintiff has a complete and present cause of action, . . . that is, when the plaintiff can file suit and obtain relief." Wallace v. Kato, 549 U.S. 384, 388 (2007) (quotation marks and internal citations omitted).

The Supreme Court, in Heck v. Humphrey, carved out an exception to normal accrual rules for certain Section 1983 claims. 512 U.S. 477, 489-90 (1994). The Supreme Court provided, "Just as a cause of action for malicious prosecution does not accrue until the criminal proceedings have terminated in the plaintiff's favor, . . . so also a [Section] 1983 cause of action for damages attributable to an unconstitutional conviction or sentence does not accrue until the conviction or sentence has been invalidated." Id. at 489-90. Under Heck, a plaintiff's Section 1983 claim does not accrue until his conviction or sentence has been vacated only if a judgment in favor of the plaintiff's Section 1983 claim "would necessarily imply the invalidity of his conviction or sentence." Id. at 487; see also Pritchett v. Farr, 592 F. App'x 816, 817 (11th Cir. 2014). As interpreted by the Eleventh Circuit, the standard means that "*as long as it is possible* that a [Section] 1983 suit would not negate the underlying conviction, then the suit is not Heck-barred." Pritchett, 592 F. App'x at 818 (emphasis in original).

The Heck inquiry is "fact-specific . . . requiring careful review." Abusaid v. Hillsborough Cty. Bd. of Cty. Comm'rs, 405 F.3d 1298, 1316 n.9 (11th Cir. 2005). "[A] judge must compare the [Section] 1983 claims and the crimes of conviction to determine, if the claims were successful, they would implicate the validity of the state conviction by negating an element of the crime." McDowell Bey v. Vega, 588 F. App'x 923, 926 (11th Cir. 2014) ("Because an unlawful search or arrest for lack of a warrant or probable cause may be followed by a valid conviction, a successful [Section] 1983 suit for a Fourth Amendment seizure violation does not necessarily implicate the validity of the subsequent conviction."), cf. Dukes v. Miami-Dade Cty., 232 F. App'x 907, 912 (11th Cir. 2007) (stating "[t]here is no object of a post-arrest cover-up by the [d]efendants that does not implicate the validity of [the plaintiff's] conviction for fleeing and eluding because any conspiracy to conceal or falsify the record regarding the [d]efendants' actions impugns the soundness of [the] conviction.").

2. Accrual of Plaintiff's Section 1983 Substantive Due Process Claim

Here, Plaintiff's conviction and sentence were for aggravated stalking. Plaintiff's Section 1983 claim is for violation of his right to intimate association. Plaintiff claims his right to intimate association was violated by the custom of delegating

authority to "McDuffie County jail administrators to waive a defendant's right to a hearing before a judge on the issue of bond and further issue purported pre[]trial conditions of release under the guise of a court order"; Defendant A. Reeves encouraging Plaintiff's wife to leave him; Defendant "Davis interjecting himself into [Plaintiff]'s divorce proceedings"; Defendants pressuring Plaintiff's wife and Plaintiff to divorce; and "Defendants willfully misle[ading] the court as to [Plaintiff]'s mental state portraying him as unstable and a danger to [Plaintiff's wife], and further willfully misle[ading] the court to believe a protective order was in effect either at the time of arrest of thereafter."[7] (Am. Compl., ¶¶ 132-34.)

These events all occurred well outside the statute of limitations. Plaintiff argues his substantive due process claim, however, did not accrue until October 2016 when his conviction was vacated because this claim "stem[s] directly from [the] unlawful conviction and sentence triggering Heck." (Br. Resp. to Mot. J. Pleadings, 11.) The Court disagrees.

Finding that Moving Defendants violated Plaintiff's right to intimate association does not necessarily implicate the validity of Plaintiff's aggravated stalking conviction. Given the different ways Moving Defendants allegedly interfered with

---

[7] Although Plaintiff groups all defendants here as being part of the hearing leading to the permanent protective order, Plaintiff specifies only Defendant Davis as being part of the hearing. (See Am. Compl., ¶¶ 78-82.)

Plaintiff's right to intimate association, it is certainly possible that a judgment for Plaintiff would not negate his underlying aggravated stalking conviction, to which he pled guilty. Furthermore, the Second Circuit dealt with a similar question and found, "To the extent that [the p]laintiff challenges the prosecutor's statements as prejudicial to his defense, his claim is barred by Heck. But to the extent that [the p]laintiff is raising a substantive due process claim based on his interest in familial association, . . . his claim does not implicate the validity of his conviction and should not have been dismissed under Heck." Zarro v. Spitzer, 274 F. App'x 31, 35 (2d Cir. 2008) (internal citation omitted).

Following this logic, if Plaintiff were to bring a Section 1983 challenge based on how Defendants' actions affected his actual conviction or sentence, the Section 1983 challenge might then necessarily implicate the validity of his conviction. Plaintiff maintaining only that the actions taken violated his right to familial association, however, does not. Consequently, Plaintiff's substantive due process claim does not fall under Heck, and Plaintiff's claim accrued well before his conviction was vacated. As such, Plaintiff's claim that Defendants violated his

substantive due process claim is barred by the statute of limitations.[8]

## C. Defendant McDuffie County's Liability

The parties to this motion do not dispute that McDuffie County cannot be held vicariously liable for acts or omissions of the Sheriff's Deputies. (Mot. for J. Pleadings, at 11-12; Br. Resp. to Mot. for J. Pleadings, at 23-25); Reply Supp. Mot. for J. Pleadings, at 12); see also Hoefling v. City of Miami, 811 F.3d 1271, 1279 (11th Cir. 2016). McDuffie County, however, may be held liable under Section 1983 if it "had a policy, custom, or practice that caused the deprivation." Hoefling, 811 F.3d at 1279. It is true that Plaintiff need not identify the exact policymakers, but Plaintiff, at this stage, must "allege a policy, practice, or custom of [McDuffie County] which caused [the alleged constitutional violation]". Id. at 1280; see also Harvey v. City of Stuart, 296 F. App'x 824, 826 (11th Cir. 2008) (a "plaintiff must identify a municipal policy or custom that caused his injury" (citation and internal quotation marks omitted)). Plaintiff fails to hold McDuffie County liable because he fails to point to any policy, practice, or custom of McDuffie County.

Plaintiff's entire argument is that "the magistrate's policy is the direct cause of deprivations of [Plaintiff]'s Fourth and

---

[8] Although Defendant Davis is not a party to this motion, the Court's decision applies to Count II of the Amended Complaint as brought against all Defendants.

Fourteenth Amendment rights." (Br. Resp. to Mot. for J. Pleadings, at 25.) According to Plaintiff, Magistrate Judge Swan created the unlawful policy around setting bond conditions because he "is the only figure empowered to create or implement a policy or practice related to bond schedules or setting bond conditions." (Br. Resp. to Mot. for J. Pleadings, at 25.) It is true that Magistrate Judge Swan's actions could be considered as creating a policy or custom, but not one that McDuffie County is liable for because "local governments can never be liable under [Section] 1983 for the acts of those whom the local government has no authority to control." Turquitt v. Jefferson Cty., 137 F.3d 1285, 1292 (11th Cir. 1998).

According to the Eleventh Circuit, "We may not assume that final policymaking authority lies in some entity other than that in which state law places it. . . . To the contrary, we must respect state and local law's allocation of policymaking authority." McMillian v. Johnson, 88 F.3d 1573, 1577 (11th Cir. 1996), *aff'd sub nom.*,ss McMillian v. Monroe Cty., 520 U.S. 781 (1997) (internal citations omitted) (quoting City of St. Louis v. Praprotnik, 485 U.S. 112, 125-26, 131 (1988)). Under Georgia's Constitution, there are select officers that are specifically "county officers", such as "[t]he clerk of the superior court, judge of the probate court, and sheriff." GA. CONST. art. 9, § 1, ¶ III(a). Magistrate courts are under the judicial branch of the State, and magistrate judges are not specified as officers of the

county in which they reside.[9] See id.; GA. CONST. art. 6, § 3, ¶ I. Although, as cited by Plaintiff, local legislation may alter the selection and terms of offices of magistrate judges, see O.C.G.A. § 15-10-20(d), the powers of the magistrate are determined by State law. Id. § 15-10-2.

Because the magistrate judge here is a member of the State's judicial system implementing State law and Plaintiff offers no facts to show McDuffie County had authority or control over the specific policy, McDuffie County may not be held liable for the policy. See Ray v. Judicial Corr. Servs., No. 2:12-cv-02819-RDP, 2017 WL 660842, at *13 (N.D. Ala. Feb. 17, 2017); Young v. Graham, No. CV 304-066, 2005 WL 2237634, at *7 (S.D. Ga. Aug. 11, 2005) (holding that the county sheriff "acts as an agent of the State in establishing and implementing policy and procedure respecting pretrial detention and conditions of confinement"). Consequently, Plaintiff's Section 1983 claims against McDuffie County fail as a matter of law.

## IV. CONCLUSION

For the foregoing reasons, Moving Defendants' motion for judgment on the pleadings (Doc. 32) is **GRANTED**. The Court **DIRECTS**

---

[9] Plaintiff cites Georgia Code section 15-10-20(d) for the proposition that "magistrate judges are officers of the county in which they hold office." (Br. Resp. to Mot. for J. Pleadings, at 24.) Section 15-10-20(d) states, "Such magistrates shall be the judges of the magistrate court and shall be known as magistrates of the county"; the section cited does not state that magistrates are "officers" of the county.

the Clerk to terminate as parties Defendants Albert Reeves, Roy Reeves, and McDuffie County.

The Court concludes this Order by outlining the present posture of all four counts brought by Plaintiff in his Amended Complaint. Plaintiff already voluntarily dismissed Counts III and IV. In this Order, the Court finds Count I fails as to Individual Moving Defendants, Count II is barred by the statute of limitations as to all Defendants, and Counts I and II fail as against McDuffie County. Therefore, the only yet undecided claim is Count I against Defendant Davis.

The Court reiterates its finding that the Amended Complaint is the operative pleading in this case, and, as such, the Court **DENIES AS MOOT** Defendant Davis's motion to dismiss (Doc. 14). Defendant Davis has yet to file a responsive pleading or motion pertaining to the Amended Complaint relying on the original complaint as the operative pleading. Having now stated otherwise, the Court allows Defendant Davis **TWENTY-ONE (21) DAYS** from the date of this Order to file a responsive pleading or appropriate motion pertaining to the operative Amended Complaint.

**ORDER ENTERED** at Augusta, Georgia, this 27th day of September, 2019.

J. RANDAL HALL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA