IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

STEVEN HORTON,                    *
                                  *
        Plaintiff,                *
                                  *
        v.                        *          CV 118-165
                                  *
DURWOOD "WOODY" DAVIS,            *
                                  *
        Defendant.                *

_____

**O R D E R**

_____

Before the Court is Defendant Durwood "Woody" Davis's ("Defendant") motion to dismiss the amended complaint (Doc. 41). As the Court stated in it September 27, 2019 Order, only Count I — Plaintiff Steven Horton's ("Plaintiff") malicious prosecution claim — as to Defendant Davis remains.[1] (Sept. 27, 2019 Order, at 30.)    For the reasons contained herein, the Court **GRANTS** Defendant's motion.

## I. BACKGROUND

Plaintiff brought this civil rights action under 42 U.S.C. § 1983 and the Fourth and Fourteenth Amendments.    (Am. Compl., Doc. 24, ¶ 2.)    Plaintiff's remaining claim is that Defendant

---

[1] Although Plaintiff's Amended Complaint contains four counts, Plaintiff voluntarily dismissed Counts III and IV as to all defendants, (Voluntary Dismissal, Doc. 35; Order, Doc. 36), which the Court allowed even though dismissing counts in this way is technically improper, see Perry v. Schumacher Grp. of La., 891 F.3d 954, 958 (11th Cir. 2018); the Court dismissed Count II as to all defendants (Sept. 27, 2019 Order, Doc. 40, at 30); and the Court dismissed Count I as to the other defendants previously in this action (id.).

maliciously prosecuted him, and the Court includes only those details relevant to addressing that claim.[2]

In March of 2010, Plaintiff and his wife separated, and his wife obtained a temporary protective order ("TPO") against him. (Id. ¶ 18.) The next month, the couple reconciled and the TPO was dismissed. (Id. ¶ 19.) In the Fall of 2011, Plaintiff was arrested after a reported domestic disturbance and taken to McDuffie County Jail. (Id. ¶¶ 30-31.) Plaintiff was charged with misdemeanor battery and released after "signing a purported pre-trial release order" that apparently contained a clause relating to Plaintiff's contact with his family. (Id. ¶¶ 30, 33; see id. ¶¶ 43-44.) In November of 2011, Plaintiff's Wife, La Pan, and their children moved out of their home and La Pan informed Plaintiff she wished to separate. (Id. ¶¶ 34-38, 39.) In front of Defendant — an assistant district attorney with the Toombs Judicial Circuit — "[Plaintiff] signed a consent order to pay child support to La Pan." (Id. ¶¶ 7, 40.)

On February 14, 2012, the McDuffie County District Attorney's Office obtained an indictment against Plaintiff for battery. (Id. ¶ 42.) That same day, "La Pan's sister-in-law texted [Plaintiff] and instructed him he was not [to] attempt any contact with La Pan or their children per . . . Defendant . . . . La Pan's sister-

---

[2] In the Background Section of its September 27, 2019 Order, the Court laid out a more complete version of the facts, which referenced the now-dismissed defendants. (Sept. 27, 2019 Order, at 3-9.)

in-law further stated La Pan was also instructed to refrain from contacting [Plaintiff]." (Id. ¶ 43.) Thereafter, La Pan allegedly complained to law enforcement that Plaintiff contacted her, and Plaintiff was arrested for aggravated stalking. (Id. ¶ 44.) On March 27, 2012 — while still in custody — Plaintiff was served with divorce papers. (Id. ¶ 56; see generally id. ¶¶ 45-57.)

On April 12, 2012, Plaintiff attended a bond hearing on his aggravated stalking charge with Defendant representing the state. (Id. ¶ 57.) Defendant "objected to the court setting bond on the aggravated stalking charge until [Plaintiff] completed a mental health evaluation." (Id. ¶ 57.) The judge set bond at $35,000.00 for the aggravated stalking charge, but Plaintiff remained in custody pending his mental health evaluation. (Id. ¶¶ 60, 61.) After receiving the evaluation results, Plaintiff's defense attorney moved to lower the bond set in the aggravated stalking charge. (Id. ¶ 63.) The presiding judge set a hearing regarding this motion for July 12, 2012. (Id. ¶ 64.)

Before that hearing, however, on July 5, 2012, Plaintiff was taken to the courthouse for a final divorce hearing despite never receiving notice of the hearing. (Id. ¶¶ 65, 67.) "There were no other cases, civil or criminal, before the court that morning, making the divorce the only matter being heard at that time." (Id. ¶ 66.) Defendant was in the courtroom. (Id.) Plaintiff left the courtroom to call his attorney and discovered his attorney was

3

also unaware of the hearing.  (Id. ¶ 67.)   "When [Plaintiff] returned to the courtroom[,] he observed [Defendant] standing at the Judge's bench conversing with [the Judge].  [Plaintiff] asked the Judge to continue the case until his attorney could be present; however, the Judge denied his request."  (Id. ¶ 68.)  The hearing continued, and "[Plaintiff] advised he was not in agreement with a divorce."  (Id. ¶ 69.)

While back in custody on July 10, 2012, Plaintiff was taken to an interview room and, inside, "he observed men he had never met before who he believed to be attorneys."  (Id. ¶ 70.)  These men "produced a stack of . . . divorce documents, including a consent order and parenting plan" and "instructed [Plaintiff] to sign."  (Id. (internal punctuation omitted).)  "[Plaintiff] felt he had no choice but to sign the documents."  (Id.)

Thereafter, Plaintiff received a bond reduction on his aggravated stalking charge to $10,000.00, a "grand jury indicted [Plaintiff] on three counts of aggravated stalking," and "[o]n July 20, 2012, [Plaintiff] was bonded out on the aggravated stalking charges and released from custody."  (Id. ¶¶ 71-73.)  In August, Plaintiff "pled not guilty to one charge of simple battery and three counts of aggravated stalking."  (Id. ¶ 77.)  At a plea hearing on September 13, 2012, Plaintiff "entered a guilty plea to one felony count of aggravated stalking and one misdemeanor count of simple battery."  (Id. ¶ 78.)

4

"[Plaintiff] was sentenced to ten (10) years' probation for the aggravated stalking conviction and one (1) year probation for the simple battery conviction to run concurrently with the sentence on the aggravated stalking conviction." (Id. ¶ 80.) Plaintiff's attorney requested First Offender Status for Plaintiff based on his assistance in a separate case. (Id. ¶ 81.) "The Judge inquired as to whether there was a TPO in effect prohibiting contact with La Pan. [Defendant] informed the court there was a TPO in place, a blatant falsity." (Id.) The Judge denied Plaintiff First Offender Status and "ordered that the already-void TPO be modified to a permanent restraining order." (Id. ¶¶ 81-82.)

Once released and on probation, Plaintiff "began paying the necessary fees." (Id. ¶ 83.) On December 17, 2012, the Georgia Department of Corrections notified Plaintiff "that he was behind on payment of supervision fees," and "[Plaintiff] immediately mailed a money order" to settle the balance. (Id. ¶ 85.) The next day, "[Plaintiff] was served with a second Petition for Contempt filed by the McDuffie County District Attorney's office for back child support not paid during his confinement." (Id. ¶ 86.) "[Plaintiff] was ordered to appear for a hearing [on] January 8, 2013[,] to show cause why he should not be held in contempt of court." (Id.)

Upon entering the room for the January 8, 2013 hearing, Plaintiff saw Defendant, along with other now-dismissed defendants, standing around the room. (Id. ¶ 89.) Plaintiff states he had receipts to prove he was up-to-date on all his payments, but when he tried to offer the receipts as evidence, a non-party individual told him "we don't need to see those." (Id. ¶ 90.)

For the rest of 2013, Plaintiff was arrested numerous times by McDuffie County police officers and, often, received "no clear explanation as to why he had been arrested." (Id. ¶¶ 94-96, 99-102, 104, 106, 110.) Feeling "he was no longer safe in McDuffie County," he moved and began living under an assumed name. (Id. ¶ 111.) Plaintiff lived this way until October 12, 2016, "when he was arrested in Liberty County for driving under the influence and several other charges." (Id. ¶ 113.) Plaintiff declined to pay bond to prevent the McDuffie County police officers — who arrived at Liberty County Jail shortly after Plaintiff's arrival — from taking him to McDuffie County jail "where he felt his life was threatened." (Id. ¶ 113.) While remaining in Liberty County Jail for almost two months, "[Plaintiff] initiated a petition for writ of habeas corpus" and filed it in September of 2016 in McDuffie County Superior Court. (Id.)

On October 12, 2014, a hearing was held on Plaintiff's habeas petition, and Defendant represented the state in opposing the

petition.   (Id. ¶¶ 114-15.)   Ultimately, "[t]he court granted [Plaintiff's] petition and vacated his conviction on the aggravated stalking charge."   (Id. ¶ 117.)

On October 2, 2018, Plaintiff brought this action.   (See generally Compl., Doc. 1.)   On September 27, 2019, the Court dismissed all defendants but Defendant Davis.   (Sept. 27, 2019 Order, at 30.)   Defendant moved to dismiss Plaintiff's amended complaint on October 17, 2019.   (Def.'s Mot. to Dismiss, Doc. 41.) Thereafter, Plaintiff responded (Pl.'s Resp. Opp'n Mot. to Dismiss, Doc. 43) and Defendant Replied (Def.'s Reply Supp. Mot. to Dismiss, Doc. 46).   Defendant's motion is now ripe for consideration.

## II.  LEGAL STANDARD

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief" so that the defendant has "fair notice" of both the claim and the supporting grounds.   Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citation omitted). Although "detailed factual allegations" are not required, Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."   Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 555).   Furthermore, a plaintiff's pleading obligation "requires more than labels and conclusions,

and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555.

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true,[3] to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. The court may not reasonably infer the defendant is liable when the well-pleaded facts fail to show "more than the mere possibility of misconduct." Id. at 679; see Butler v. Sheriff of Palm Beach Cnty., 685 F.3d 1261, 1265 (11th Cir. 2012) ("[F]actual allegations must be enough to raise a right to relief above the speculative level.")

## III. DISCUSSION

Defendant moves to dismiss Plaintiff's complaint arguing: (A) Defendant is entitled to absolute prosecutorial immunity; and (B) Plaintiff fails to state a claim for a constitutional violation by Defendant. (Def.'s Br. Supp. Mot. to Dismiss, Doc. 41-1, at

---

[3] The court must accept all well-pleaded facts in the complaint as true and construe all reasonable inferences therefrom "in the light most favorable to the plaintiff." Garfield v. NDC Health Corp., 466 F.3d 1255, 1261 (11th Cir. 2006) (citation omitted). Conclusory allegations, however, "are not entitled to an assumption of truth — legal conclusions must be supported by factual allegations." Randall v. Scott, 610 F.3d 701, 709-10 (11th Cir. 2010).

10-17.)  At the outset, the Court repeats that the only remaining claim is Count I against Defendant.  As such, in evaluating Defendant's motion to dismiss, the Court considers Plaintiff's cause of action as outlined in paragraphs 120 through 130 of the Amended Complaint.[4]

## A. Prosecutorial Immunity

Moving Defendant moves for judgment as to Plaintiff's malicious prosecution claim on grounds that he is entitled to absolute prosecutorial immunity.  There are two types of immunity prosecutors may receive: absolute prosecutorial immunity and qualified immunity.  Buckley v. Fitzsimmons, 509 U.S. 259, 268-69 (1993).  The law affords prosecutors absolute immunity because qualified immunity protection alone "would prevent the vigorous and fearless performance of the prosecutor's duty that is essential to the proper functioning of the criminal justice system." Imbler v. Pachtman, 424 U.S. 409, 427-28 (1976).  The burden of showing that absolute immunity is justified falls on the official seeking the immunity.  Burns v. Reed, 500 U.S. 478, 486 (1991).

A prosecutor does not receive absolute immunity, however, for all actions taken while maintaining the position of prosecutor. Buckley, 509 U.S. at 269.  The Supreme Court employs a functional approach, under which absolute immunity applies if, when looking

---

[4] The Court notes Plaintiff neglects to name Defendant by name under Count I; thus, apparently, leaving it to the Court to determine which factual allegations involving Defendant support Plaintiff's malicious prosecution claim.

to the "particular actions of [the] government official[]," those actions "fit within a common-law tradition of absolute immunity." Id. Under the common law, prosecutorial immunity applies to conduct that is "intimately associated with the judicial phase of the criminal process," which necessarily includes the duties involved in "initiating a prosecution and in presenting the State's case." Imbler, 424 U.S. at 430, 431. Also included are "actions preliminary to the initiation of a prosecution and actions apart from the courtroom." Id. at 431 n.33. In sum, a prosecutor is absolutely immune for actions taken "in the course of his role as an advocate for the State." Buckley, 509 U.S. at 273. In contrast, a prosecutor's "administrative duties and those investigatory functions that do not relate to an advocate's preparation for the initiation of a prosecution or for judicial proceedings are not entitled to absolute immunity." Id.

For example, the Supreme Court found absolutely protected a prosecutor's acts of "appearing before a judge and presenting evidence in support of a motion for a search warrant" "[b]ecause issuance of a search warrant is a judicial act, [thus] appearance at the probable-cause hearing was 'intimately associated with the judicial phase of the criminal process.'" Id. at 271 (citing Burns, 500 U.S. at 491) (quoting Burns, 500 U.S. at 492) (some internal quotation marks omitted). The Supreme Court also held a prosecutor's "out-of-court 'effort to control the presentation of

a witness' testimony'" was absolutely protected.   Id. at 272-73

(quoting Imbler, 424 U.S. at 430 n.32).

In Burns, however, the Supreme Court found no prosecutorial

immunity applied to the act of "giving legal advice to the police."

Buckley, 509 U.S. at 271 (citing Burns, 500 U.S. at 492-93).   The

Supreme Court explained:

> There is a difference between the advocate's role in
> evaluating evidence and interviewing witnesses as he
> prepares for trial, on the one hand, and the detective's
> role in searching for the clues and corroboration that
> might give him probable cause to recommend that a suspect
> be arrested, on the other hand.   When a prosecutor
> performs the investigative functions normally performed
> by a detective or police officer, it is neither
> appropriate nor justifiable that, for the same act,
> immunity should protect the one and not the other.

Id. at 273 (citation and internal quotation marks omitted).

Furthermore, when a prosecutor acts as a witness in a case, he is

not entitled to absolute immunity.   See Kalina v. Fletcher, 522

U.S. 118, 129-31 (1997) (finding the prosecutor not entitled to

absolute immunity when he submitted his own sworn testimony in

support of a court filing).   Before analyzing for which acts

Defendant may be entitled to absolute immunity, the Court looks to

the Amended Complaint to see whether there are sufficient factual

allegations to plausibly show Defendant took the alleged actions.

1. Plausible Factual Allegations

In brief, Plaintiff argues that Defendant:

(1)   "[I]ntentionally instructed [Plaintiff]'s wife and family to cease contact with Plaintiff";

(2)   "[P]ressured Plaintiff and his wife to divorce";

(3)   "[S]erved as a fact witness in the divorce proceedings";

(4)   "[P]ressured Plaintiff to execute final divorce paperwork before he was released from confinement"; and

(5)   "[W]illfully misled the trial judge as to the existence of a TPO[,] which had been dismissed more than one[-]and[-]a[-]half years prior."

(Pl.'s Br. Resp. Def.'s Mot. to Dismiss, Doc. 43-1, at 16.) Defendant argues Plaintiff misstates or overstates certain of these allegations based on what he pleaded in the Amended Complaint.   (Def.'s Reply Supp. Mot. to Dismiss, at 5.) Juxtaposing the above five statements against the Amended Complaint, the Court agrees with Defendant.

As to the first contention, Plaintiff factually alleges: "La Pan's sister-in-law texted [Plaintiff] and instructed him he was not [to] attempt any contact with La Pan or their children per . . . Defendant . . . . La Pan's sister-in-law further stated La Pan was also instructed to refrain from contacting [Plaintiff]." It is plausible that Defendant was also the individual instructing

La Pan to refrain from contacting Plaintiff.  Therefore, the Court accepts these factual allegations as true.

Regarding the second statement, the Court finds no allegation supporting the statement that Defendant pressured Plaintiff and his wife to divorce and need not consider this only-briefed assertion.

No factual allegations support the third inference. Plaintiff's Amended Complaint notes only Defendant's presence in the courtroom during his final divorce hearing.  Plaintiff neither claims Defendant actually testified as a fact witness nor offers any facts showing that Defendant officially participated in the proceedings whatsoever.  Although Plaintiff concludes Defendant "could only have been acting in the capacity of [a] non-party fact witness[]," insufficient factual allegations exist to make that conclusion plausible.  (Am. Compl., ¶ 66.)

As to the fourth contention, Plaintiff alleges he signed the final divorce papers feeling he had no other choice.  Plaintiff neglects, however, to allege Defendant was part of the group pressuring him to sign.  (See id. ¶ 70.)  In fact, Plaintiff alleges a group of "men he had never met before" produced the documents and instructed Plaintiff to sign.  As such, no factual allegations tie Defendant to this event.

13

Finally, allegations support the fifth contention that, during Plaintiff's sentencing, Defendant falsely "informed the court there was a TPO in place" "prohibiting contact with La Pan."

In conclusion, the Court finds a factual basis to support, at least in part, only Plaintiff's first and fifth contentions.[5] The question now is whether these actions were taken as advocate of the state thus entitling Plaintiff to absolute prosecutorial immunity.

## 2. Absolute Immunity

Defendant is entitled to absolute immunity for incorrectly informing the Court that a TPO was in place. Defendant was called on to inform the Court of the TPO status while acting as assistant district attorney during Plaintiff's sentencing. Statements made to a court while representing the state during a sentencing hearing qualify as prosecutorial duties. See Buckley, 509 U.S. at 270 (stating prosecutors maintain absolute immunity "for making false or defamatory statements during, and related to, judicial proceedings"); Peace v. Baker, 697 F. Supp. 1145, 1146, 1147 (D. Nev. 1988) (holding prosecutor entitled to absolute immunity for

---

[5] Although not raised in opposition by Plaintiff, the Amended Complaint alleges two other instances wherein Defendant acted: (1) Defendant "objected to the court setting bond on the aggravated stalking charge until [Plaintiff] completed a mental health evaluation"; and (2) Defendant opposed Plaintiff's habeas petition. Because both actions clearly qualify as part of Defendant's prosecutorial duties — and Plaintiff fails to object to that argument — the Court finds Defendant is entitled to prosecutorial immunity for both actions. (Compare Def.'s Br. Supp. Mot. to Dismiss, at 14-15, with Pl.'s Br. Resp. Def.'s Mot. to Dismiss, at 16.)

14

allegations that he supplied false information during the sentencing proceeding). Any malicious intent behind such statements does not strip a prosecutor of absolute protection. See Elder v. Athens-Clark Cty., 54 F.3d 694, 695-96 (11th Cir. 1995) (stating prosecutorial immunity extends to allegations "that the prosecutor filed charges in bad faith, or for evil motives, or as a conspirator"); see also Yeager v. Binford, No. 1:18-CV-526-WKW, 2019 WL 630296, at *3 (M.D. Ala. Feb. 14, 2019) (citation omitted) ("[A]s with judicial immunity, allegations of malicious intent do not overcome a prosecutor's absolute immunity."). Thus, even if Defendant conveyed this false information intentionally in bad faith, he retains absolute protection.

As to the final factual allegation, Defendant fails to persuade the Court that Defendant is entitled to absolute immunity for telling La Pan to refrain from contacting Plaintiff. As such, the Court continues to determine whether this factual allegation is sufficient to sustain Plaintiff's pending malicious prosecution claim.

## B. Constitutional Violation

The sole remaining claim is that through his alleged instructions to La Pan to refrain from contacting Plaintiff, Defendant maliciously prosecuted Plaintiff. Just as the Court did in its September 27, 2019 Order, the Court begins by determining whether Plaintiff establishes Defendant committed a constitutional

violation before conducting a qualified immunity analysis. (Sept. 27, 2019 Order, at 12-13 (citing Bennett v. Parker, 898 F.2d 1530, 1534 (11th Cir. 1990); Mitchell v. McKeithen, 672 F. App'x 900, 902 (11th Cir. 2016).) For the following reasons, the Court finds Plaintiff's malicious prosecution claim fails as a matter of law.

The Eleventh Circuit has recognized "malicious prosecution as a violation of the Fourth Amendment and a viable constitutional tort cognizable under [Section] 1983." Wood v. Kesler, 323 F.3d 872, 881 (11th Cir. 2003). As a section 1983 claim, malicious prosecution "provide[s] a broad remedy for violations of federally protected civil rights." Blue v. Lopez, 901 F.3d 1352, 1359 (11th Cir. 2018). Malicious prosecution requires a plaintiff to "prove (1) the elements of the common law tort of malicious prosecution[] and (2) a violation of [his] Fourth Amendment right to be free from unreasonable seizures." Black v. Wigington, 811 F.3d 1259, 1266 (11th Cir. 2016) (citation and internal quotation marks omitted). "The common[]law elements include: (1) a criminal prosecution instituted or continued by the present defendant; (2) with malice and without probable cause; (3) that terminated in the plaintiff accused's favor; and (4) caused damage to the plaintiff accused." Id. (citation omitted).

In analyzing the elements of the common law tort of malicious prosecution, the Eleventh Circuit "has looked to both federal and state law." Wood, 323 F.3d at 881. But "a Fourth Amendment

16

malicious prosecution claim under [Section] 1983 remains a federal constitution claim, and its elements and whether they are met ultimately are controlled by federal law." Blue, 901 F.3d at 1358 (quoting Wood, 323 F.3d at 882). "The only 'proper targets' of a malicious prosecution claim are individuals involved in the decision to prosecute the plaintiff." Blair v. McCollum, No. 1:06-CV-1345-BBM, 2008 WL 11406006, at *5 (N.D. Ga. Jan. 7, 2008) (citing Eubanks v. Gerwen, 40 F.3d 1157, 1160-61 (11th Cir. 1994)).

Under the first prong of a malicious prosecution claim, Defendant cannot be found liable because he in no way instituted or continued Plaintiff's criminal prosecution through his interaction with La Pan. There are no remaining factual allegations that could potentially support a malicious prosecution claim. As such, Plaintiff's claim that Defendant maliciously prosecuted him fails.

## IV. CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss the amended complaint (Doc. 41) is **GRANTED**. Finding that no defendants remain, Plaintiff's case is **DISMISSED**. The Clerk is **DIRECTED** to **TERMINATE** any remaining motions or deadlines, if any, and **CLOSE** this case.

**ORDER   ENTERED**   at   Augusta,   Georgia,   this ⎽⎽⎽⎽ day   of

September, 2020.

_____
J. RANDAL HALL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA